IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JANICE PIGOTT**, *et al.*,        ) | |
|                                     ) | |
|    Plaintiffs,                      ) | |
|                                     ) | |
| v.                                  ) | CIVIL ACTION 07-0083-WS-C |
|                                     ) | |
| **SANIBEL DEVELOPMENT, LLC**,       ) | |
|                                     ) | |
|    Defendant.                       ) | |

**ORDER**

This matter is before the Court on defendant Sanibel Development, LLC's Motion to Dismiss or, Alternatively, to Stay (doc. 9) relating to the claims of plaintiffs Janice Pigott, Kimberly L. Barnes and Christopher Barnes (collectively, the "Pigott plaintiffs"), and on Sanibel's Motion to Dismiss or, Alternatively, to Stay (doc. 20, at #6) relating to the claims of plaintiffs Cynthia Priolet, Phillippe Priolet and Susan Hersey (collectively, the "Priolet plaintiffs"). Also pending is the Pigott plaintiffs' Motion to Strike (doc. 17). All of these motions are now ripe for disposition.

**I.    Background.**

This consolidated action commenced with the filing of two very similar complaints against Sanibel in this District Court. The Pigott plaintiffs filed their Complaint (doc. 1) on February 5, 2007, alleging a single federal cause of action under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701 *et seq.* ("ILSFDA" or the "Act"). The crux of the Pigott plaintiffs' claim is that they entered into purchase agreements with Sanibel in March and May 2005 to buy Units 204 and 605 of a condominium project that Sanibel is developing in Gulf Shores, Alabama; that Sanibel failed to comply with the reporting requirements of ILSFDA by failing to furnish a printed property report to plaintiffs before execution of the purchase agreements; that the Pigott plaintiffs lawfully and timely revoked their purchase agreements with Sanibel on that basis in December 2006 and January 2007; and that Sanibel responded by calling the Pigott plaintiffs' letters of credit in January 2007 in the amount of $202,400, which letters

were being held in escrow to secure the units' purchase.[1]  The Pigott plaintiffs request a judgment under ILSFDA revoking the purchase agreements, returning their earnest money, releasing their letters of credit, and awarding them attorneys' fees and costs.  The Priolet plaintiffs filed a similar Complaint (doc. 20, at #1) against Sanibel pursuant to ILSFDA on February 6, 2007.[2]  In addition to contending that Sanibel violated the Act by failing to provide the requisite property report, the Priolet plaintiffs plead a second ILSFDA cause of action, asserting that Sanibel engaged in a course of fraudulent conduct by misrepresenting that the condominium units the Priolet plaintiffs were purchasing were pre-development units, when in fact one unit sold to them had previously been "flipped" to a third party before being made available for sale to the Priolet plaintiffs.

Sanibel has now filed nearly identical Motions to Dismiss or, Alternatively, to Stay with respect to both the Pigott plaintiffs' Complaint and the Priolet plaintiffs' Complaint.  The sole basis asserted in the Motions for dismissal or stay is that Sanibel has brought state-court action against all of these plaintiffs, seeking declaratory judgment pursuant to Ala. Code §§ 6-220 *et seq.*, to adjudicate the parties' respective rights and status concerning the purchase agreements, the letters of credit, a certificate of deposit submitted by plaintiffs as earnest money, and the

---

[1] In general, it is unlawful under the Act for any developer to sell a nonexempt lot unless a statement of record has been filed with the Department of Housing and Urban Development and unless a printed property report has been furnished to the purchaser prior to the signing of any purchase agreement.  15 U.S.C. § 1703(a)(1)(A),(B).  The Complaint alleges that no such report was furnished to plaintiffs in advance of the agreements' execution. (Complaint, ¶¶ 12-13.)  Unless a statutory exemption applies, if a required property report is not furnished to the purchaser in advance of signing the agreement, "such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing."  15 U.S.C. § 1703(c).  Such revocation is precisely the relief sought by plaintiffs in this lawsuit.

[2] The Priolet plaintiffs (who are represented by different counsel than the Pigott plaintiffs) initially filed their Complaint as a separate lawsuit in federal court, bearing case number Civil Action 07-0090-C.  After Sanibel moved to dismiss the Priolet plaintiffs' Complaint, Magistrate Judge Cassady (the presiding judge in that case) granted the Priolet plaintiffs' motion to consolidate the 07-0090 litigation into the instant case, which explains why there are now two complaints, two motions to dismiss/stay, and two sets of briefs on file for Civil Action 07-0083-WS-C.

proceeds of same. Exhibits to Sanibel's Motions reflect that the three state-court actions (one against the Pigott plaintiffs and two against the various Priolet plaintiffs) were filed in the Circuit Court of Baldwin County, Alabama on January 26, 2007, some 10 days before this federal action commenced. As set forth in its Motions, Sanibel's position is that a distinct danger of piecemeal litigation would be created unless this Court abstains from hearing plaintiffs' claims.

## II.     Analysis.

### A.     Colorado River *Abstention is Unwarranted.*

Generally speaking, "as between state and federal courts, the rule is that pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) (citation omitted); *see also Wexler v. Lepore*, 385 F.3d 1336, 1341 (11th Cir. 2004) ("exercise of jurisdiction by the district court merely preserves the federal forum for federal claims raised by plaintiffs in a federal proceeding, although a similar state action was also filed"). Indeed, the Eleventh Circuit has emphasized federal courts' "virtually unflagging obligation ... to exercise the jurisdiction given them" and has stressed that "[a] policy permitting federal courts to yield jurisdiction to state courts cavalierly would betray this obligation." *Ambrosia Coal*, 368 F.3d at 1328 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). On that basis, the law of this Circuit is that "federal courts can abstain to avoid duplicative litigation with state courts only in exceptional circumstances" such as those warranting *Colorado River* abstention. *Id.*

The *Colorado River* doctrine, to which the parties allude in their respective filings, authorizes a federal district court to dismiss or stay an action where there is an ongoing parallel action in state court, but only under "exceptional circumstances." *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004); *see also Ambrosia Coal*, 368 F.3d at 1328. Indeed, the Supreme Court has framed this doctrine as an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813. In applying *Colorado River*, the Court is mindful of the admonition that "[o]nly the clearest of justifications will warrant dismissal of the federal action" under that doctrine. *Ambrosia Coal*, 368 F.3d at 1329 (citation omitted).

The Eleventh Circuit has identified six factors to be considered in assessing whether

*Colorado River* abstention is proper, to-wit: (i) whether any court has assumed jurisdiction over property, (ii) the relative inconvenience of the fora, (iii) the potential for piecemeal litigation, (iv) the temporal order in which each forum obtained jurisdiction, (v) whether state or federal law governs, and (vi) whether the state court is adequate to protect the parties' rights. *See Ambrosia Coal*, 368 F.3d at 1331. This Court "must weigh these factors with a heavy bias in favor of exercising jurisdiction." *TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1295 (11th Cir. 1998). No one factor is necessarily dispositive; rather, "the factors must be considered flexibly and pragmatically, not as a mechanical checklist." *Ambrosia Coal*, 368 F.3d at 1332. "One factor alone can be the sole motivating reason for the abstention." *Moorer*, 374 F.3d at 997.

The first two *Colorado River* criteria are largely non-factors here, inasmuch as there is no indication that any court has asserted jurisdiction over a *res* in these cases, nor is there any meaningful difference in convenience between a Baldwin County Circuit Court forum and one in this District Court. The third *Colorado River* factor, avoidance of piecemeal litigation, favors abstention, but only modestly. Abstention is not automatically warranted in every case where there is parallel litigation, or else defendants could always escape federal court by filing state-court lawsuits. Rather, "as it is properly understood, *Colorado River*'s factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Ambrosia Coal*, 368 F.3d at 1333. Here, to be sure, there would be some duplication of effort and potentially piece-by-piece decision-making if the state and federal lawsuits were allowed to proceed on parallel tracks, but "there is no indication that piecemeal litigation poses any greater waste or danger here than it does in the vast majority [of] federal cases with concurrent state counterparts." *Id.*[3] The piecemeal litigation factor is clearly not a legally sufficient basis for

---

[3] Besides, under the unique procedural circumstances obtaining here, piecemeal litigation will invariably occur, irrespective of whether this action proceeds in federal court or not. As plaintiffs have noted, there is yet another related action involving the identical defendant and identical issues pending in this District Court, styled *Richard Taylor, et al. v. Sanibel Development, LLC*, Civil Action 07-0185-WS-C. All appearances are that the legal issues presented in *Taylor* under the ILSFDA are indistinguishable from those presented in this action. Indeed, *Taylor* appears to involve the same condominium development and the same issues that

abstention in this case.

Next, the Court must consider the order in which the state and federal courts obtained jurisdiction. Unquestionably, Sanibel won the race to the courthouse, filing its declaratory-judgment lawsuits in state court more than a week before the Priolet plaintiffs and Pigott plaintiffs made it to federal court with their Complaints. But the appropriate inquiry for *Colorado River* abstention purposes is not only which complaint was filed first, but rather "how much progress has been made in the two actions." *Ambrosia Coal*, 368 F.3d at 1333 (citation omitted); *see also TranSouth*, 149 F.3d at 1295 (this factor is not a mere mechanical assessment of the chronological order in which the two suits were initiated, but rather focuses on "the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier"). In that respect, both the state and the federal actions appear similarly situated and to have progressed to a similar degree. In both state and federal proceedings, it appears, motions to dismiss are pending and discovery has not commenced. Accordingly, disparities in the relative progress of the state and federal cases appear nonexistent and cannot justify abstention here.[4]

The fifth *Colorado River* factor, concerning whether state or federal law governs, is critical to this Court's analysis. This action involves exclusively federal claims against Sanibel, to-wit: Claims that the condominium unit purchase agreements at issue are covered by the ILSFDA and that Sanibel violated the Act in failing to provide certain reports to plaintiffs antecedent to execution. The Court anticipates that this litigation will turn on questions of

---

have been joined here regarding whether said development is or is not exempt from the Act. There is no parallel state-court proceeding in the *Taylor* action. Thus, even if this Court were to abstain in this action to allow the Baldwin County Circuit Court to decide the respective rights of the parties (the Priolet plaintiffs, the Pigott plaintiffs, and Sanibel) under the ILSFDA, this Court would still be left with deciding exactly the same issues with respect to different (but identically situated) plaintiffs and Sanibel in the *Taylor* action. Thus, piecemeal litigation will inevitably ensue regardless of whether this Court exercises its jurisdiction over this action or not, and the Court finds that the risk of such piecemeal litigation will not be materially exacerbated by the continued exercise of federal jurisdiction here.

[4]     Further, there is no indication that plaintiffs were in any way dilatory in presenting their claims; rather, despite reasonable diligence on their part in filing suit within weeks after the controversy arose, plaintiffs were simply beaten to the punch by Sanibel.

statutory interpretation concerning the relevant provisions of the ILSFDA, as well as construction of federal regulations and caselaw on the subject. Unquestionably, this Court is better positioned to resolve these questions of purely federal law than an Alabama state court would be; accordingly, this factor weighs heavily against *Colorado River* abstention. *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 23, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("the presence of federal-law issues must always be a major consideration weighing against" abstention). In reaching this conclusion, the Court considers and rejects Sanibel's attempts to minimize this factor. Specifically, Sanibel argues that the federal nature of ILSFDA is of no consequence because that statute is "inapposite to the parties' dispute." (Reply Brief (doc. 16), at 2.) Far from being inapposite, the Act furnishes plaintiffs' sole causes of action against Sanibel and is thus the entire *raison d'etre* of this lawsuit. Moreover, by all appearances, the state-court declaratory judgment actions will also turn on the ILSFDA issue, as the federal plaintiffs have identified no other theories under which revocation of the purchase agreements might be permissible. Finally, to the extent that Sanibel suggests that this Court may be unable to exert jurisdiction over state-law issues, that contention is unavailing because: (a) there are no state-law claims in the federal Complaints, so the question of whether jurisdiction would lie over such claims if they had been pleaded is both hypothetical and speculative, and (b) even if there were, supplemental jurisdiction would unquestionably attach pursuant to 28 U.S.C. § 1367.

The sixth and final factor concerns whether the state court is adequate to protect the parties' rights. As the Eleventh Circuit has explained, however, "[t]his factor will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights." *Ambrosia Coal*, 368 F.3d at 1334. There is no basis in the record for concluding that either this Court or the Baldwin County Circuit Court will prove inadequate to safeguard the respective parties' rights; therefore, this factor is neutral on the abstention question.

In sum, upon careful consideration of the *Colorado River* factors and the binding appellate authority construing and applying same, all with the required heavy bias in favor of exercising jurisdiction, the Court readily concludes that this is not one of those extraordinary cases that may trigger the narrow *Colorado River* exception to the district courts' robust and virtually unflagging duty to exercise jurisdiction. The mere fact that there are overlapping, parallel actions in state and federal court, without more, is not sufficient to warrant abstention,

particularly where exclusively federal law questions are presented in this action, and the state litigation has not progressed materially further than these proceedings.[5]

In an effort to avert an adverse result, Sanibel leans heavily on *Merrill Lynch, Pierce, Fenner & Smith v. Haydu*, 675 F.2d 1169 (11th Cir. 1982), which relied on principles of federalism, comity and practicality to affirm the dismissal of a federal action where there was a parallel state action. The *Haydu* court explained that "[p]rinciples of comity come into play when separate courts are presented with the same lawsuit," and that in such circumstances "one court must yield its jurisdiction to the other." *Id.* at 1173. In determining which court should give way, *Haydu* articulated the following guidelines: (a) "a court having jurisdiction over all matters in dispute should have jurisdiction of the case" to avoid fragmenting the dispute for resolution in two different fora; and (b) "[i]n absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Id.* at 1173-74. The *Haydu* court further emphasized federalism concerns which "require that a federal court 'tread lightly' when a state proceeding is already underway. ... Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* at 1173.

On its face, *Haydu* certainly lends support to Sanibel's position. But there is an obvious tension between these principles urging federal courts to step aside when the same issues are pending in a previously filed state-court lawsuit, as discussed in *Haydu*, and those embraced in the *Ambrosia Coal* line of cases, which command district courts to exercise their jurisdiction, notwithstanding duplicative state-court litigation, in the absence of exceptional circumstances. It is unclear how, if at all, *Haydu* may be reconciled with the Supreme Court's unambiguous pronouncements in *Moses H. Cone* and *Colorado River* concerning the narrowness and exceptional nature of the abstention remedy. Whatever vitality *Haydu*'s comity and practicality

---

[5] Indeed, on the facts presented here, the Court is of the opinion that it would be reversible error to abstain. *See, e.g., Lisa, S.A. v. Mayorga*, 2005 WL 2172165, *1 (11th Cir. Sept. 8, 2005) (finding that district court erred in abstaining under *Colorado River*, where facts presented do not present the necessary exceptional circumstances needed for a court to abstain from exercising jurisdiction in order to avoid duplicitous litigation with state court); *Ambrosia Coal*, 368 F.3d at 1334 (reversing stay where *Colorado River* factors, individually and collectively, do not weigh strongly in favor of abstention and district court "fail[ed] to appreciate the gravity of its duty to exercise jurisdiction").

language may continue to have in other contexts, however, the Court finds that the abstention issues presented in this action are governed by the *Colorado River* analysis, which courts in this Circuit have consistently applied to circumstances analogous to those present here. *Haydu* can neither vitiate nor supplant the *Colorado River* inquiry, which militates overwhelmingly against abstention.

### B.      Federal Subject Matter Jurisdiction Plainly Lies.

In its reply briefs, Sanibel raises an additional basis for abstention or dismissal, to-wit: Its belief that the Act does not apply to the purchase agreements at issue and that federal jurisdiction is therefore wanting. In particular, Sanibel invokes the statutory exemption which excludes from the ILSFDA's registration and disclosure requirements "the sale or lease of lots in a subdivision containing fewer than one hundred lots which are not exempt under subsection (a) of this section." 15 U.S.C. § 1701(b)(1). In support of its position, Sanibel offers the affidavit of its general counsel, Samuel G. McKerall, who avers that the Sanibel development includes 108 units, at least 9 of which were never made available to the public but were instead sold to persons engaged in a bona fide sales business, rendering those 9 units nonexempt under § 1702(a)(7).[6] (Doc. 16, at Exh. A.) Based on the McKerall Affidavit, Sanibel repeatedly asserts that federal subject matter jurisdiction is lacking. (Reply Brief (doc. 16), at 2-3, 5.)

There are four distinct infirmities in Sanibel's jurisdictional argument. First, it was raised for the first time in a reply brief. Sanibel's initial Motions to Dismiss or, Alternatively, to Stay did not hint at any defect in federal subject matter jurisdiction. As a procedural matter, a movant is generally proscribed from raising new arguments in a reply brief when such arguments were available to it previously. *See, e.g., United States v. Gericare Medical Supply Inc.*, 2000 WL 33156443, *10  (S.D. Ala. Dec. 11, 2000) (declining to consider movant's argument in reply brief that exceeds scope of motion to dismiss, as such an argument is not properly before the court); *Martinez v. Weyerhaeuser Mortg. Co.*, 959 F. Supp. 1511, 1515 (S.D. Fla. 1996) ("the Court finds that the movant may not raise new arguments in a reply brief"); *United States v.*

---

[6]      Section 1702(a)(7) in turn provides that the ILSFDA exempts "the sale or lease of lots to any person who acquires such lots for the purpose of engaging in the business of constructing residential, commercial, or industrial buildings or for the purpose of resale or lease of such lots to persons engaged in such business." *Id.*

*Feinberg*, 89 F.3d 333, 341 (7th Cir. 1996) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court."). Sanibel having provided no explanation for its belated submission of the argument that the ILSFDA does not apply, that contention is not properly before the Court at this time.

Second, even if this argument had been timely presented, it would still fail, as Sanibel has improperly conflated the threshold question of subject matter jurisdiction with the secondary question of whether plaintiffs' asserted federal causes of action have merit. "Ordinarily, the test of federal jurisdiction is not whether the cause of action is one on which the claimant can recover. Rather, the test is whether the cause of action alleged is so patently without merit as to justify the court's dismissal for want of jurisdiction." *S.E.C. v. Mutual Benefits Corp.*, 408 F.3d 737, 741 (11th Cir. 2005) (citations omitted); *see also United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1356-57 (11th Cir. 2006) (federal question jurisdiction is not defeated by possibility that plaintiffs might not prevail on federal claim on the merits). Simply stated, Sanibel's contention that plaintiffs' ILSFDA claims are legally defective goes to the merits of such claims, and not the jurisdiction of this Court to hear them.[7]

Third, Sanibel's approach jumps the gun considerably. This action is not before the Court on summary judgment. Discovery has not yet commenced. This Court cannot and will not dismiss plaintiffs' ILSFDA causes of action on the merits based on an affidavit that plaintiffs have never had the opportunity to test, challenge or investigate via the discovery process. Defendant is not entitled to have this case dismissed in its infancy based on facts outside the pleadings (and likely in defendant's sole possession) that plaintiffs have never had an

---

[7] To be sure, the inclusion of a federal question in a complaint does not always give rise to federal jurisdiction; indeed, if a federal claim is so insubstantial as to be frivolous, federal question jurisdiction may not lie. *See, e.g., Household Bank v. JFS Group*, 320 F.3d 1249, 1254 (11th Cir. 2003) ("The dismissal of a federal-question claim for lack of subject-matter jurisdiction is justified only if that claim were so attenuated and unsubstantial as to be absolutely devoid of merit, or frivolous.") (citations omitted); *Southpark Square Ltd. v. City of Jackson, Miss.*, 565 F.2d 338, 341-42 (5th Cir. 1977) (federal claim "must be more than frivolous to support federal question jurisdiction" and can satisfy this threshold only if "there is any foundation of plausibility to the claim"). Whatever their ultimate merits may or may not be, plaintiffs' ILSFDA causes of action are clearly not frivolous; therefore, this limitation to 28 U.S.C. § 1331 jurisdiction is inapplicable.

opportunity to explore or controvert.[8]

Fourth, Sanibel ignores the fact that both Complaints expressly predicated federal jurisdiction on diversity of citizenship, as well as the existence of a federal question. In particular, both Complaints clearly allege complete diversity of citizenship between plaintiffs and Sanibel, and an amount in controversy exceeding $75,000. As such, even if Sanibel were correct that the ILSFDA claims cannot support federal jurisdiction under § 1331, the pleadings clearly support diversity jurisdiction under § 1332. Federal jurisdiction over this action is proper.

### III.    Conclusion.

For all of the foregoing reasons, defendant Sanibel Development, LLC's two substantively identical Motions to Dismiss or, Alternatively to Stay (docs. 9, 20 at #6) this consolidated action are due to be, and the same hereby are, **denied**. Sanibel is **ordered** to file an answer to both complaints on or before **April 27, 2007**.

In accordance with the Preliminary Scheduling Order (doc. 20 at #8) entered in 07-0090-C prior to its consolidation with the present case, the parties' Rule 26(f) report must be filed no later than **May 14, 2007**. That Preliminary Scheduling Order applies with equal force to all parties in this consolidated action, and will govern this proceeding.

DONE and ORDERED this 13th day of April, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[8] In response to the McKerall Affidavit, plaintiffs have filed a Motion to Strike (doc. 17) seeking to strike both the Affidavit and Paragraph 3 of Sanibel's reply brief, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. The undersigned having already concluded that the McKerall Affidavit and accompanying legal argument by Sanibel are premature and will not be credited at this time, no constructive purpose would be served by striking these materials from the record. The Motion to Strike is therefore **denied** as unnecessary.